THE PEOPLE OF THE STATE OF NEW YORK et al., Appellants, v
PORT DISTRIBUTING CORP. et al., Respondents.

First Department, February 20, 1986

**APPEARANCES OF COUNSEL**

*William J. Caplow* of counsel *(James A. Sevinsky* and *Ezra*

*I. Bialik* with him on the brief; *Robert Abrams, Attorney-General,* and *Robert Hermann, Solicitor General,* attorneys), for appellants.

*Larry Hutcher* of counsel *(Stein, Davidoff & Malito,* attorneys), for respondents.

## OPINION OF THE COURT

Ross, J.

The parties to this appeal inform us that this case presents us with an appellate issue of first impression: did Trial Term abuse its discretion, when it granted a motion to dismiss the action, brought by the Attorney-General (AG) of the State of New York, on behalf of the People of the State of New York and the New York State Department of Environmental Conservation (DEC), to enforce provisions of the New York State Returnable Container Act (Container Act), and regulations of the DEC, upon the ground, that under the doctrine of primary jurisdiction, the DEC, rather than the courts, is the appropriate forum in which to adjudicate the question of whether the provisions of the Container Act and regulations of the DEC have been violated?

The Container Act is part of the New York State Environmental Conservation Law (ECL), and its provisions are found beginning at ECL 27-1001. When this State adopted the Container Act in 1983, it joined "a growing list of states with parallel laws" *(see,* Weinberg, Supplementary Practice Commentary, McKinney's Cons Laws of NY, Book 17½, ECL 27-1001, p 612).

The primary purpose of the Container Act is to provide a solution to the indiscriminate discarding, without regard to the public safety or the environment, of soft-drink and/or beer bottle or can containers. The State Legislature made the following findings concerning the serious consequences resulting from this problem (ECL 27-1001): "Discarded beverage bottles and cans create a hazard to vehicular traffic, a source of physical injury to pedestrians, farm animals and machinery and an unsightly accumulation of litter which must be disposed of at increasing public expense. Beverage bottles and cans also create an unnecessary addition to the state's and municipalities' already overburdened solid waste and refuse disposal systems. Unsegregated disposal of such bottles and cans creates an impediment to the efficient operation of resource recovery plants. Further, the legislature finds that the

uninhibited discard of beverage containers constitutes a waste of both mineral and energy resources".

Through the device of establishing financial incentives, the Container Act endeavors to discourage container littering. Among the key sections of the act are: (1) all beverage containers "sold or offered for sale in this state shall have a refund value of not less than five cents", and that refund value shall be plainly marked on the said container (ECL 27-1005); (2) every dealer, who does business in this State, must accept and pay the customer this 5-cent refund on any returned "empty beverage containers of the design, shape, size, color, composition and brand sold by" such dealer (ECL 27-1007 [1]); (3) distributors "shall accept from a dealer or operator of a [empty beverage container] redemption center any empty beverage containers of the design, shape, size, color, composition and brand sold by [such] distributor", and, for each such container accepted by them, these distributors shall pay the dealer or the operator of the redemption center the refund value of 5 cents, plus a handling fee of 1.5 cents, for a total of 6.5 cents per container (ECL 27-1007 [2], [3] [material in brackets added]); and (4) a dealer, or operator of a redemption center, or distributor may not refuse to redeem such containers, even if they are broken or damaged, unless they do not state the refund value upon them (ECL 27-1009).

Violations of the Container Act are considered to "be a public nuisance" (ECL 27-1015 [1]). Furthermore, violators of provisions of this act are (ECL 27-1015 [1]): "liable for a civil penalty of not more than five hundred dollars, and an additional civil penalty of not more than five hundred dollars for each day during which each such violation continues. Any civil penalty may be assessed following a hearing or opportunity to be heard."

The DEC is the State agency designated by law to administer the Container Act, and to carry out this duty, the DEC has been given the power to promulgate rules and regulations (ECL 27-1009, 27-1013, 27-1014). Pertinent to the instant matter are the following DEC regulations: (a) 6 NYCRR 367.5 (a) (2) requires that a distributor must

"(i) accept, from any dealer or redemption center, any empty beverage containers of the type sold by the distributor regardless of whether or not the filled beverage container was originally sold by the distributor; and

"(ii) pay the dealer or redemption center the [5-cent] refund

value of each such beverage container" (material in brackets added);
(b) 6 NYCRR 367.5 (c) (1) requires a distributor to "pick up such empty beverage containers, at the distributor's expense, from a dealer [such as a retail store] at least as often as such distributor delivers filled beverage containers to such dealer"; and (c) 6 NYCRR 367.5 (c) (4) requires that a distributor must promptly pay all applicable 5-cent refunds and 1½-cent handling fees to dealers or redemption center operators, and, in the case of a dealer or redemption center operator, who does not buy filled containers from such distributor, payment by the distributor must be made not later than 10 days after acceptance of the empty containers.

The Port Distributing Corp. (Port) is a New York corporation, which is located in New York City. It is engaged in the business of distributing, within the City of New York, various brands of beer. Within approximately a month after the Container Act went into effect on July 1, 1983, Port established the Trident Recycling Center, Inc. (Trident), which is also a New York corporation, as Port's agent to handle the pickup and/or redemption of empty beverage containers. The close connection between Port and Trident is further evidenced by the fact that the location of Trident is adjacent to the place of business of Port.

Early in January 1984, by summons and complaint, the AG commenced the instant action, in the Supreme Court, New York County, upon behalf of the plaintiffs, who are the People of the State of New York and the DEC, against the defendants Port and Trident, on the grounds that the defendants had allegedly violated numerous provisions of the Container Act as well as certain DEC regulations issued concerning that act. Initially, the plaintiffs sought by their action, injunctive relief, as well as civil penalties against the defendants.

The complaint contains four causes of action.

In substance, the first cause of action alleges that: (a) defendant Port, in violation of DEC regulation 6 NYCRR 367.5 (c) (1), which was discussed *supra,* does not make any pickups of empty beverage containers from the dealers to whom it sells filled containers; (b) Trident, as Port's agent, does not make pickups from all of the dealers to whom Port sells filled containers, that have the refund value noted on them, as often as Port makes deliveries. In pertinent part, Trident made no pickups from the Seward Park Consumers Co-op, Inc. (Seward)

store, located at 175 Clinton Street, New York County, between December 1, 1983 and December 27, 1983, and a complete pickup was not made until December 30, 1983. This alleged almost four-week omission of pickups by Trident occurred at the same time that Seward was allegedly receiving at least once and sometimes twice a week deliveries of filled containers from Port. In addition, with respect to Grand Street Consumers Cooperatives, Inc. (Grand Street), located at 545 Grand Street, New York County, defendants failed to make any pickups between December 6, 1983 and December 27, 1983, and apparently a complete pickup was not made at Grand Street until December 30, 1983. Allegedly, just as in the case of Seward, this almost three-week omission in pickups concerning Grand Street occurred at the same time Grand Street was allegedly receiving at least once and sometimes twice a week deliveries of filled containers from Port.

Furthermore, allegedly these complete pickups, mentioned *supra,* at Seward and Grand Street, came about only after frequent and repeated requests. Allegedly, this haphazard pickup of empty containers by the defendants from Seward and Grand Street violates DEC regulation 6 NYCRR 367.5 (c) (1), which was discussed *supra;* and (c) defendants, in violation of ECL 27-1007 (2) and (3), and DEC regulation 6 NYCRR 367.5 (a) (2), which ECL section and DEC regulation were discussed *supra,* have allegedly continually harassed Atlantic Commodities Sales Corp. (Atlantic), located at 875 East 145th Street, Bronx County, when Atlantic delivered empty containers of the types sold by Port, which have the refund value stated on them. In pertinent part, defendants allegedly carried out their harassment of Atlantic by informing Atlantic's representative that none of these empty containers could be accepted on the day that Atlantic tried to deliver them, or by forcing Atlantic's driver and truck to wait a long time before permitting the subject truck to unload, or until a receipt was given for empty containers that were accepted. Moreover, the defendants allegedly have threatened to refuse an entire truckload or an entire bag of cans, or case of bottles, because the defendants allegedly contended that a few containers were not properly sorted. Also, defendants allegedly violated DEC regulation 6 NYCRR 367.5 (c) (4), which was discussed *supra,* since they waited more than 10 days from the date of acceptance of empty containers before they mailed out a check to Atlantic in payment therefor.

Furthermore, in substance, the second cause of action al-

leges that, as a result of defendants' violations of the ECL sections and DEC regulations which were detailed *supra* in the first cause of action, Seward, Grand Street and Atlantic "have all suffered damages \* \* \* amounting to thousands of dollars."

Moreover, in substance, the third cause of action alleges that the defendants' violations of the ECL sections and DEC regulations, which were detailed *supra* in the first cause of action, constitute a "public nuisance", within the meaning of ECL 27-1015.

Finally, in substance, the fourth cause of action alleges that, pursuant to ECL 27-1015, which was discussed *supra,* each defendant, as a result of the defendants' violations of the ECL sections and DEC regulations which were detailed *supra* in the first cause of action, is liable for civil penalties for 48 days of violations in the amount of not more than $500 plus up to an additional $500 for each day that the violation continued. In pertinent part, (a) with respect to Seward, allegedly there were 22 days of violation; (b) with respect to Grand Street, allegedly there were 18 days of violation; and (c) with respect to Atlantic, allegedly there were 8 days of violation.

According to the AG, this is the first action undertaken to enforce violations of the new Container Act.

During the course of the litigation, the plaintiffs' complaint was affected by changing circumstances. While the AG's motion for a preliminary injunction was pending in the New York County Supreme Court, the AG wrote to the Justice presiding, setting forth the changed circumstances. In pertinent part, the AG wrote:

"Since the [preliminary injunction] motion was argued there have been some changes in circumstances. For example, we are advised that the two stores [Seward and Grand Street] cited in the complaint and moving papers as having bought beer from defendant Port Distributing Corp. but as not having their empty containers picked up promptly, are no longer customers of Port. Therefore, injunctive relief is no longer appropriate with respect to those stores. The issues raised in the motion papers regarding Atlantic Commodities Sales Corp. [which firm was mentioned *supra]* are now being discussed at the legislative and administrative levels, and further clarification may be forthcoming through those means.

"The main issue in the lawsuit which continues to be very relevant, and requires a prompt resolution, is whether defen-

dants violated the [Container Act] by failing to pick up empty containers as required from [Seward and Grand Street] while those stores were buying beer products from Port" (material in brackets added).

Subsequently, an expedited trial was ordered in June 1984 of this limited issue concerning the frequency of the defendants' pickups and deliveries from Seward and Grand Street.

After the plaintiffs had filed their note of issue, and the case was conferenced at Trial Term, the defendants for the first time, many months after the start of this action, moved, pursuant to CPLR 3211 (a) (7), to, *inter alia,* dismiss the complaint, upon the ground that continued maintenance of this action violates the doctrine of primary jurisdiction. Trial Term held that the doctrine applied herein and granted defendants' motion.

As a result of our examination of the record, we conclude that Trial Term erred.

The Court of Appeals in *Capital Tel. Co. v Pattersonville Tel. Co.* (56 NY2d 11, 22), held that the doctrine of primary jurisdiction: "is intended to co-ordinate the relationship between courts and administrative agencies to the end that divergence of opinion between them not render ineffective the statutes with which both are concerned, and to the extent that the matter before the court is within the agency's specialized field, to make available to the court in reaching its judgment the agency's views concerning not only the factual and technical issues involved but also the scope and meaning of the statute administered by the agency *(Hewitt v New York, New Haven & Hartford R. R. Co.,* 284 NY 117, 124; *Maritime Bd. v Isbrandtsen Co.,* 356 US 481; *United States v Western Pacific R. R. Co.,* 352 US 59; *Far East Conference v United States,* 342 US 570; see 3 Davis, Administrative Law, §§ 19.01-19.06; 2 NY Jur 2d, Administrative Law, § 181). Though the agency's jurisdiction is not exclusive, the court postpones its action until it has received the agency's views *(United States v Philadelphia Nat. Bank,* 374 US 321, 353; *United States v American Tel. & Tel. Co.,* 461 F Supp 1314, 1329, n 45; 3 Davis, *op. cit.,* § 19.01)".

In view of the fact that the only issue to be determined at trial is the simple, nontechnical issue of whether the defendants failed to pick up empty containers from Seward and Grand Street as frequently as ECL 27-1007 and DEC regulation 6 NYCRR 367.5 (c) (1) require, we find that the doctrine

of primary jurisdiction, as set forth in *Capital Tel. Co. v Pattersonville Tel. Co. (supra)*, is inapplicable, for the following reasons:

DEC, which is the administrative agency concerned, is one of the plaintiffs. Since DEC has made a decision "to go to * * * court for enforcement, it makes little sense to refer the very question at issue to the agency" *(Civil Aeronautics Bd. v Aeromatic Travel Corp.,* 489 F2d 251, 254 [2d Cir 1974]). Moreover, DEC's resort to the courts is a strong indication to us that, based upon DEC's special competence, it has concluded that neither administrative fact finding nor application of its expertise is necessary to resolve this issue. "This doctrine [of primary jurisdiction] can have no application where, as here, the very institution of suit in the courts by the relevant administrative body represents an exercise of its 'special competence' " *(Interstate Commerce Commn. v Main Cent. R. R. Co.,* 505 F2d 590, 594 [2d Cir 1974]).

The key issue being litigated is whether defendants violated DEC regulation 6 NYCRR 367.5 (c) (1), which, as mentioned *supra,* requires that a distributor—such as defendant Port— pick up empty containers from dealers as often as distributor Port delivered the filled containers.

We find that the doctrine of primary jurisdiction is inapplicable in the instant matter, since the question presented to us is whether Port and Trident complied with an agency rule or regulation. We further find that the weight of legal authority sustains this position, as the doctrine of primary jurisdiction "does not apply if the issue is whether [an agency regulation such as the instant one] has been violated" *(United States Tour Operators Assn. v Trans World Airlines,* 556 F2d 126, 130 [2d Cir 1977] [material in brackets added]). The Federal courts have consistently refused to decide the fairness or reasonableness of a regulation which is within the special competence of an administrative agency. However, in *Civil Aeronautics Bd. v Modern Air Transp.* (179 F2d 622, 624 [2d Cir 1950]), the court stated that the "doctrine is not applicable where the issue, regardless of its complexity, is not the reasonableness of the * * * rule, but a violation of such rule."

Obviously, the instant issue of whether defendant Trident made pickups at Seward and Grand Street as often as defendant Port delivered to Seward and Grand Street is the kind of factual issue that the courts decide on a regular basis. Considering the nontechnical nature of that issue, we find that "[i]n

this case * * * [a consideration] * * * of technical expertise [does] not call for prior reference to [DEC]" *(Nader v Allegheny Airlines,* 426 US 290, 304 [1976]).

A review of legal authority makes it clear that courts do not automatically apply the doctrine of primary jurisdiction simply because the controversy before them involves an administrative agency *(see, for example, Mississippi Power & Light Co. v United Gas Pipe Line Co.,* 532 F2d 412, 418-419 [5th Cir 1976], *cert denied* 429 US 1094 [1977]). Before a court decides to apply this doctrine it must consider whether the primary objectives of the doctrine—the need for specialized expertise and for uniformity of result—will be helpful in the resolution of particular litigation *(see, for example, United States v Western Pac. R. R. Co.,* 352 US 59, 62-65 [1956]).

The instant litigation involves nothing more than for the trial court to determine whether an administrative regulation has been violated. Such a judicial determination does not call for the assistance of administrative expertise, since there are no issues of fact involved that are "not within the conventional experience of judges" *(Far E. Conference v United States,* 342 US 570, 574 [1952]).

Further, in view of Port's position that the DEC has the exclusive discretion to assess penalties for violations of the ECL section and DEC regulation, we find that Trial Term correctly held that the AG has standing "to enforce any provision of Article 27 of the Environmental Conservation Law, which of course includes the 'Container Law' ".

ECL 71-2727 (2), which, in pertinent part, reads: "The attorney general, on his own initiative, or at the request of the [DEC] commissioner, may initiate any appropriate action or proceeding to enforce any provision of article 27 or any rule or regulation promulgated pursuant thereto and any order issued or penalty assessed pursuant to this title." Moreover, we find that this power of the AG to initiate an action at law to enforce the Container Act is not diminished by either ECL 27-1015 (1), which requires that "[a]ny civil penalty may be assessed following a hearing or opportunity to be heard", and/or DEC regulation 6 NYCRR 367.15 which requires the imposition of a civil penalty only after a hearing, pursuant to the Uniform Enforcement Hearing Procedures (6 NYCRR part 622).

The reasons for our conclusion are: (a) while ECL 27-1015 (1) requires a hearing, as mentioned *supra,* before penalty assess-

ment, this hearing requirement would be met in an AG initiated law action since the defendants would receive a hearing and an opportunity to be heard before the court; (b) nothing in ECL 27-1015 (1), mandates that only the DEC may assess penalties, and since, as mentioned *supra,* ECL 71-2727, explicitly authorizes the AG to initiate actions or proceedings, it may reasonably be concluded that the DEC is not the only entity that may institute proceedings to assess penalties; (c) examination of the DEC regulation 6 NYCRR 367.15, which provides for a hearing, pursuant to the Uniform Enforcement Hearing Procedures, does not mandate that the DEC hearing procedure is the only forum for the assessment of civil penalties that can be used, and (d) even if there was an ambiguity or inconsistency between ECL 71-2727 (2), which is the AG's authority to institute an action, and DEC regulation 6 NYCRR 367.15, mentioned *supra,* DEC regulation 6 NYCRR part 622 provides for the ECL provision to control.

Accordingly, the order, Supreme Court, New York County (Michael J. Dontzin, J.), entered February 20, 1985, which granted the defendants' motion to dismiss the action, upon the ground that the Department of Environmental Conservation has primary jurisdiction to adjudicate the matter, is unanimously reversed, on the law, the facts, and in the exercise of discretion, defendants' motion to dismiss should be denied and the action reinstated, without costs.

KUPFERMAN, J. P., SULLIVAN, FEIN and MILONAS, JJ., concur.

Order, Supreme Court, New York County, entered on February 20, 1985, unanimously reversed, on the law, the facts, and in the exercise of discretion, defendants' motion to dismiss is denied and the action is reinstated, without costs and without disbursements.