■ MISSIONARY SISTERS OF THE SACRED HEART, Respondent, v MELVYN MEER, Appellant.—Order and judgment (one paper) of the Supreme Court, Appellate Term, First Department, entered August 15, 1986, which reversed a judgment of the Civil Court, New York County (Roger Bryant Hunting, J.), entered February 5, 1985, and dismissed tenant respondent-appellant's counterclaim for damages resulting from landlord petitioner's denial to him of a garage parking space, without prejudice to tenant's commencement of an enforcement proceeding with the Division of Housing and Community Renewal, and awarded final judgment of possession to the landlord for $2,641.56, is unanimously reversed, on the law, and the judgment of the Civil Court is reinstated, without costs.

The issues on this appeal emanate from tenant Melvyn Meer's efforts to obtain a garage space in the 87-unit rent-stabilized building where he has resided since 1977. Landlord petitioner is the Missionary Sisters of the Sacred Heart, which also owns and operates the adjacent Cabrini Hospital. In 1980, after he had obtained a car, tenant Meer orally requested a space in the building's garage, which has only 11 usable garage spaces. His requests were rejected with the answer that spaces were reserved for Cabrini Hospital employees. By letter dated May 7, 1981, and mailed to the building's former managing agent, Meer made a written request for a space.

Having received no favorable response, Meer and another tenant, on behalf of themselves and four other tenants, commenced a proceeding with the Conciliation and Appeals Board, the predecessor of the Division of Housing and Community Renewal (DHCR), for, inter alia, garage spaces. By determination and order dated July 18, 1984, the DHCR concluded that under sections 2 (m) and 62 (A) of the Code of the Rent Stabilization Association of New York City, Inc., garage service was an ancillary service the landlord was required to maintain in this building. Furthermore, it determined that pursuant to section 60 (1) (b) of the Multiple Dwelling Law the garage spaces had to be provided to building occupants. Only those spaces not rented by occupants could be rented to nonoccupants. Multiple Dwelling Law § 60 (1) (b) further provides that any space so rented to a nonoccupant "shall be made available to an occupant within thirty days after written request therefor." In accordance with these provisions, the DHCR directed that the landlord "provide garage space to the

occupants in the subject building upon their request for such space."

Prior to the DHCR order being issued, the landlord, by petition served June 15, 1984, commenced a nonpayment summary proceeding to recover tenant Meer's May and June rent. Respondent Meer interposed various defenses and counterclaims, among them a counterclaim for damages in the amount of $5,000 suffered as a consequence of the landlord's refusal to provide Meer a garage space in the building. Petitioner filed no answer to the counterclaims, nor does the record on appeal indicate it ever moved to dismiss the counterclaims on any basis. The matter went to trial, by which time the court had before it the administrative determination and record. The trial evidence disclosed that only four garage spaces were occupied by building tenants; the other seven were used by Cabrini Hospital employees. There were fewer written requests for spaces by building occupants than there were spaces occupied by nonresident hospital employees. On damages, there was testimony and evidence submitted on the monthly parking fees paid by tenant to have his car parked in a private off-site garage and testimony on the range of parking rates at other garages in the area. It was stipulated that the monthly garage rate for the building's spaces was $65.

In a decision dated December 31, 1984, the Civil Court, in reliance upon the determination of the DHCR that the landlord must make available the garage spaces to building occupants upon their request, held that tenant Meer, having so requested a space, was entitled to one. The court then fixed damages at the difference between what Meer paid at a private off-site facility, which fees were comparable to those of other facilities in the area, and the $65 per month charged by the landlord to the tenant, which amounted to $4,960.40. Since tenant Meer was in arrears in rent for $2,641.56, that left a balance in tenant's favor for $2,318.84, and judgment in that amount was directed.

On appeal to Appellate Term that court reversed the judgment of Civil Court, concluding that Civil Court should have abstained from hearing this counterclaim under the doctrine of primary jurisdiction. It further held that even if the counterclaim had been properly considered, the measure of damages was erroneous. This court granted tenant Meer leave to appeal, and we now reverse the order of Appellate Term.

The doctrine of primary jurisdiction is not a doctrine by which one court is preempted from hearing a matter because

another court or agency has exclusive jurisdiction, nor does it mean that the court in which the contested matter is brought lacks subject matter jurisdiction, a defect which would certainly be nonwaivable. Rather, as the Court of Appeals has stated: "[t]he doctrine of primary jurisdiction is intended to coordinate the relationship between courts and administrative agencies to the end that divergence of opinion between them not render ineffective the statutes with which both are concerned, and to the extent that the matter before the court is within the agency's specialized field, to make available to the court in reaching its judgment the agency's views concerning not only the factual and technical issues involved but also the scope and meaning of the statute administered by the agency *(Hewitt v New York, New Haven & Hartford R. R. Co.,* 284 NY 117, 124; *Maritime Bd. v Isbrandtsen Co.,* 356 US 481; *United States v Western Pacific R. R. Co.,* 352 US 59; *Far East Conference v United States,* 342 US 570; see 3 Davis, Administrative Law, §§ 19.01-19.06; 2 NY Jur 2d, Administrative Law, § 181). Though the agency's jurisdiction is not exclusive, the court postpones its action until it has received the agency's views *(United States v Philadelphia Nat. Bank,* 374 US 321, 353; *United States v American Tel. & Tel. Co.,* 461 F Supp 1314, 1329, n 45; 3 Davis, *op. cit.,* § 19.01)". *(Capital Tel. Co. v Pattersonville Tel. Co.,* 56 NY2d 11, 22.)

When the agency, however, has already determined which laws and regulations apply to a given matter, no possibility exists of a divergence of opinion, and all that remains is to determine whether there has been compliance with a rule or regulation and whether damages may be recovered, areas conventionally within the experience of courts, the weight of legal authority holds that in such cases the doctrine of primary jurisdiction does not apply. *(See, United States Tour Operators Assn. v Trans World Airlines,* 556 F2d 126, 130; *RCA Global Communications v Western Union Tel. Co.,* 521 F Supp 998, 1006; *State of New York v Winter,* 121 AD2d 287, 289; *People v Port Distrib. Co.,* 114 AD2d 259, 266-267.) That is the situation here.

By the time the matter came before Civil Court for trial, the DHCR had ruled on the landlord's statutory obligation with respect to maintaining garage spaces in its building and determined that under the Multiple Dwelling Law the building's garage spaces had first to be offered to occupants of the building. The argument that the order was ambiguous, particularly with respect to the term "occupants", is groundless. Section 60 of the Multiple Dwelling Law, which requires that

garage spaces go to building "occupants", also states that every garage space or structure shall be designed to accommodate not more than two motor vehicles for each "family" in such dwelling. (§ 60 [2] [a].) Obviously, then, for purposes of garage service the term occupants is synonymous with residential tenants and does not include commercial tenants or the landlord itself. *(But see,* Multiple Dwelling Law § 278, which creates an exception and specifically makes Multiple Dwelling Law § 60 applicable to artists holding joint residential and professional tenancies.)

It is also clear that issues pertaining to a possible violation of the landlord's obligation under Multiple Dwelling Law § 60 and whether damages are recoverable are within the conventional expertise of housing courts, and it was therefore appropriate for Civil Court to have ruled on this counterclaim. CCA 110 establishes a Housing Part to enforce State and local laws and codes regarding housing standards. While the Civil Court is a court of limited jurisdiction and has only those equity powers specifically conferred upon it by statute, section 110 grants the Civil Court broad powers in landlord-tenant proceedings, including the power to issue injunctions and restraining orders (CCA 110 [a] [4]) and employ "any remedy, program, procedure or sanction authorized by law for the enforcement of housing standards" (CCA 110 [c]). It is clear that the Legislature envisioned the Housing Part of the Civil Court to be the appropriate forum in which to enforce housing standards.

The Rent Stabilization Code, moreover, specifically permits grieved tenants the right to pursue, in addition to those remedies provided by the Code, any other remedies granted by other provisions of law. *(See,* Rent Stabilization Law [Administrative Code of City of New York] § YY51-6.0 [b]; § YY51-6.0.3.) The logic of this is clear, for the type of relief granted by the Rent Stabilization Law for a landlord's failure to maintain services is either an order to the landlord to maintain services or a reduction in the rent. (§ YY51-6.0.3.) Since in this case the garage service fee is paid apart from the rent, a reduction in Meer's rent would have been inappropriate relief. Additionally, ordering the landlord to provide tenant with a garage space would not have addressed tenant's claim that he was entitled to money damages for the substantial expenses he incurred because of the landlord's denial to him of a space in the building. Thus, tenant Meer was entitled to pursue other and broader remedies afforded in a housing court.

Civil Court's finding that tenant Meer was entitled to a

parking space was consistent with the DHCR ruling and with the evidence heard at trial. While Multiple Dwelling Law § 60 does permit the landlord to rent garage spaces to nonoccupants in the event that there are spaces not being used by building occupants, the statute goes on to state that any space so rented "shall be made available to an occupant within thirty days after written request therefor." (§ 60 [1] [b].) The evidence at trial revealed that at the time of tenant Meer's written request for a space, there were certain spaces being rented out to nonoccupants and during that relevant time period the number of spaces rented to nonoccupants was greater than the number of occupants requesting such spaces. Thus, by the very words of the statute, the landlord was obligated to provide tenant Meer with a parking space.

Because Meer was denied a space, it was also appropriate for the Civil Court to determine what damages tenant Meer consequently incurred. It was stipulated for the record that had Meer been given an on-site garage space he would have been charged a monthly rental fee of $65. Instead, Meer paid fees to a private off-site garage which were in excess of that, but which were within the range of what other private garages in the area charged. In landlord-tenant actions a tenant may take it upon himself to incur an expense for a repair or service which the landlord is obligated to provide, and he may sue to recover the cost of that repair either in an independent action or by way of counterclaim in an action for rent. (Woodruff v Castaldo, 113 AD2d 403, 409.) Civil Court's decision to grant tenant Meer damages for the excess of what he paid in garage fees over what he would have paid for a building space was therefore based on recognized principles of landlord-tenant law. Accordingly, for the reasons stated above, we reverse the order of the Appellate Term and reinstate the judgment of the Civil Court. Concur—Sandler, J. P., Carro, Kassal, Rosenberger and Smith, JJ.